SOLOMON KALVIN, Appellant, *v.* MARY WEST STURGES, Respondent.

First Department, April 29, 1921.

Landlord and tenant — summary proceedings for breach of covenant of lease — waiver of provision against subletting — provisions in lease for summary proceedings and ejectment not inconsistent — election of remedies — Laws of 1920, chapter 942, known as Housing Laws, not applicable where warrant issued before said laws took effect — necessity for new order or warrant after reversal of judgment of Appellate Term reversing judgment awarding possession.

Where the terms of a lease provided that the tenant should not assign the same or sublet the premises without the landlord's or agent's consent in writing, and it appeared that the tenant had sublet the premises several times with knowledge of the landlord or his agent, without consent, but also without objection at the time the rent was received, the landlord will not thereby be deemed to have waived his objection to subletting and may institute summary proceedings to dispossess the tenant.

Two clauses in a lease giving the landlord the right to recover possession by summary proceedings and by ejectment are not inconsistent and he may elect to pursue his remedy under either clause.

Chapter 942 of the Laws of 1920, known as the Housing Laws, is not applicable to a summary proceeding, where the warrant therein was issued in favor of the landlord long before said chapter became effective.

Upon the reversal of a determination of the Appellate Term, reversing a judgment awarding possession in summary proceedings, a new order or warrant is not required in the original proceeding, where the tenant was never in possession after the first warrant was issued.

APPEAL by the plaintiff, Solomon Kalvin, from a determination of the Appellate Term of the Supreme Court, entered in the office of the clerk of the Supreme Court on the 12th day of July, 1920, reversing a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Ninth District, awarding possession to the plaintiff in summary proceedings.

*Alfred G. Reeves* of counsel [*Maurice Knapp* with him on the brief], for the appellant.

*Finkler & McEntire* [*Joseph M. Herzberg* of counsel], for the respondent.

DOWLING, J.:

The landlord is the owner of an apartment house at 3 West Fiftieth street, in the borough of Manhattan, city of New York. On January 15, 1919, he entered into a written agreement with the tenant whereby he leased to her the rear apartment on the second floor of said premises, consisting of three rooms and a bath, for a term of three years and eight and one-half months, commencing January 15, 1919. Said lease contained, among others, the following provisions:

" *Third.* That the Tenant shall not assign this agreement or underlet the premises, or any part thereof, or make any alterations in the apartments or premises without the Landlord's or agent's consent in writing; or permit or suffer upon the same any act or thing deemed extra-hazardous on account of fire; and shall comply with all rules and regulations of the Board of Health and City Ordinances applicable to said premises; and that she will not use nor permit to be used the

said premises nor any part thereof for any purpose other than that of a private dwelling apartment for herself and family only."

"*Eighth.* And it is agreed and covenanted by the Tenant in consideration of the letting of the premises herein that upon default made in any of the covenants, agreements and conditions, or of the rules and regulations herein, that then this lease at the option of the Landlord after three days' notice of such option in writing served upon the Tenant, shall expire immediately at the expiration of such notice, and the Landlord shall be entitled to the immediate possession of said premises and institute summary proceedings against the said Tenant under section 2231 of the Code of Civil Procedure relating to the holding over of tenants, and the expiration at the end of such notice above provided for shall be in the same manner as if that were the expiration of the original term herein demised. And the said Tenant hereby agrees to pay the said yearly rent as above stipulated without any deduction, fraud or delay; it being understood that in case of non-payment of the rent at the times and in the manner above provided, or if default shall be made in any covenant or agreement herein contained, the said Landlord and the Landlord's legal representatives shall have the right to enter said premises either by process of law, any legal proceeding or otherwise, and to re-let said premises as agent of the said Tenant and to receive the rent therefor, applying the same to the payment of the rent due by these presents and holding the Tenant and the Tenant's legal representatives liable for any deficiency and for any damage that may be caused by or through such entry or reletting, and the said Tenant shall also be liable for such further sum as may be necessary to put the premises in tenantable condition, and as may be otherwise necessarily expended for any purpose; and any notice in writing of the intention to re-enter, as provided for in the third section of an act entitled ' An Act to Abolish Distress for Rent and for other Purposes,' passed March 13, 1846,* is hereby waived."

"*Sixteenth.* That if default be made in any of the covenants herein contained, then it shall be lawful for the said Landlord

---

* See Laws of 1846, chap. 274, § 3; now Code Civ. Proc. § 1505.— [REP.

to re-enter the said premises, and the same to have again, re-possess and enjoy. The said Tenant hereby expressly waives the service of any notice in writing of intention to re-enter as provided for in [section] 1505 of the Code of Civil Procedure and in the third section of an Act entitled ' An Act to abolish distress for Rent and for other purposes ' passed May 13, 1846."

Paragraphs 3 and 8 were part of an ordinary printed form of lease, and paragraph 16 was added at the end thereof in typewriting.

On December 13, 1919, the landlord commenced this proceeding to dispossess the tenant upon the ground that, in violation of the terms of the lease, she had sublet the apartment to one Broffe; and that on learning the facts on or about December 8, 1919, the landlord gave written notice to the tenant that he had elected to terminate her tenancy under the terms of the hiring as set forth in paragraph 8 of the lease for the reason that she had willfully violated the covenant of the lease by subletting the said premises without his consent. Upon the trial it appeared that the tenant had sublet the apartment in question to several persons during the spring, summer and early fall of 1919, without the landlord's written consent as required by the lease. The landlord admitted that he knew of the earlier subletting to other people than Broffe for a period of about eight months and had accepted the rent for those months, but he claimed that he had notified the tenant through her son, who represented her after she sailed for England in July, that the apartment must never be rented to anybody unless the tenant's son submitted to the landlord the credentials of the tenant; that he (Sturges) could not sublet the premises without the landlord's consent and that Sturges must submit credentials and give the landlord a few days' time to consider any proposed subtenant. The landlord testified that Sturges promised that he would never sublet again without giving the landlord such notice. This conversation is said to have taken place in February or March. However, without submitting the credentials of the proposed subtenant to the landlord he testified that in March or later another subtenant was put in, who is referred to throughout the testimony as the

First Department, April, 1921.                    [Vol. 196

" Frenchman " (his name in fact being Aubert), and the only reason he had not commenced proceedings against the tenant based on his objections to this new subtenant occupying the apartment, was because he could not find his lease. It also appeared that the landlord had what he deemed valid reasons for objecting to Broffe, the last subtenant. On the other hand, the tenant's son, Preston Sturges, who represented her interest in this lease during her absence, testified that he had received the rent from the various subtenants and paid the same to the landlord, and that his first conversation with the landlord about subtenants was in September when the landlord objected to the two subtenants who had previously occupied the apartment, one Poland, who stayed two months, and the Frenchman, who stayed one month. Sturges further testified that the landlord said he had not the slightest objection to subletting but that the subtenants must be nice people and make a sublease for a long term. He also testified that the landlord's only objection to the Frenchman as a subtenant was that he had " cluttered up " the hallway with baggage, but that the landlord had explicitly consented to the subletting to him. Broffe, the latest subtenant, testified that he had a conversation with the landlord who said he had nothing against Broffe but his grievance was against Sturges. Sturges' testimony as to his conversation with the landlord was denied by the latter on rebuttal. The landlord admitted having received the check for the rent of the premises for the month of November, 1919, but testified that at the time he did not know of the subletting to Broffe and as soon as he learned of the facts, he returned the check for the December rent and notified Sturges that he was about to commence proceedings to recover possession of the apartment. There are also in evidence letters written by the landlord's attorney in October and November objecting to the subletting by the tenant without the landlord's written consent.

Upon the conflicting evidence the trial court submitted the issues to the jury, instructing them as to the force and effect of the testimony bearing on the question of whether or not the landlord had waived, by his conduct, the provision of the lease requiring his consent to any subletting to be in writing. The charge was a very full and fair one, to which

the only exception taken was to an additional charge made at the request of the landlord's counsel, which exception was without merit. The jury returned a verdict in favor of the landlord. The judgment and final order entered upon this verdict were reversed by the Appellate Term upon the ground that clauses " eighth " and " sixteenth " of the lease were inconsistent; that the typewritten clause took precedence over the printed one; and that the motion to dismiss the proceeding for want of jurisdiction made by tenant's counsel should have been granted. In this we think the learned Appellate Term was in error and that the case comes within the rule laid down by Mr. Justice SCOTT in *Martin* v. *Crossley* (46 Misc. Rep. 254), wherein it was held that clauses similar to the two under consideration were not inconsistent, but gave the landlord alternative remedies, either of which he was at liberty to pursue; and having made his election in this case we think, upon the verdict of the jury, the judgment is proper and should have been affirmed.

Nor is the objection sustainable that this proceeding is a pending one under the Housing Laws of 1920 and, therefore, the landlord is without relief. Chapter 942 of the Laws of 1920 (adding to Code Civ. Proc. § 2231, subd. 1a), relied upon as furnishing a bar to the landlord's right to recover, did not become effective until September 27, 1920, and provides that in a pending proceeding for the recovery of real property in cities of a population of one million or more and in cities in a county adjoining such a city on the ground that the occupant holds over after the expiration of his term a warrant shall not be issued unless the petitioner establishes to the satisfaction of the court that the proceeding is one mentioned in the exceptions enumerated in the subdivision. But in this proceeding the final order was made December 19, 1919, in favor of the landlord, awarding to him the delivery of possession of the premises by reason of the expiration of the tenant's term, and the warrant was issued thereunder January 12, 1920. Therefore, the warrant having issued long before the Housing Laws became effective this proceeding is not affected by their enactment. Nor is a new order or warrant required in the original proceeding. It was stated and conceded upon the argument in this appeal that the tenant was actually

removed pursuant to the warrant, and that after the reversal. of the judgment by the Appellate Term a stay was granted, so that the tenant never has been in possession since the warrant was issued, and no further action is required either to remove her or to terminate her rights in the premises. All that remains to be done is to determine the validity of the original judgment and final order.

The determination of the Appellate Term will, therefore, be reversed, with costs to the appellant, and the order and judgment of the Municipal Court affirmed, with costs.

CLARKE, P. J., SMITH, MERRELL and GREENBAUM, JJ., concur.

Determination reversed, with costs, and judgment of Municipal Court affirmed, with costs.